IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) FILED: APRIL 2, 2008 <br> ) 08CV1892   PH <br> ) |
| Plaintiff | ) JUDGE NORGLE <br> ) MAGISTRATE JUDGE ASHMAN |
| v. | ) <br> ) |
| ROMAN SAVCHENKO, | ) <br> ) |
| Defendant. | ) |

## COMPLAINT

Plaintiff, Webster Bank, National Association, by and through its attorneys, hereby complains against Roman Savchenko for breach of contract and in support states the following:

## JURISDICTION

1. This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348. This is a civil action between citizens of different states. The amount in controversy in this action exceeds $75,000.00, exclusive of costs and interest.

2. Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(3) because Defendant Roman Savchenko ("Savchenko") resides within the district and is subject to personal jurisdiction here.

## THE PARTIES

3. Plaintiff, Webster Bank, National Association ("Webster"), is a national banking association with its principal place of business located in Waterbury, Connecticut.

4. Defendant Savchenko is a resident of Cook County, Illinois.

## THE FACTS

5. On December 15, 2006, Webster and Savchenko entered into a loan agreement evidenced by a written promissory note. (12/15/06 promissory note "Note" attached hereto as Exhibit A).

6. Under the terms of the Note, Webster agreed to loan Savchnko the principal amount of $999,900 at a yearly interest rate of the "Prime Rate" plus 2.5%. Ex. A, Note, ¶ 2. The loan was for the purpose of construction on the property located at 4907 North Winchester Avenue, Chicago, IL 60640 and Webster funded the loan pursuant to the agreement.

7. Pursuant to the Note, on February 1, 2007, Savchenko was to begin making monthly payments for the interest only. These payments were to continue until Savchenko had "paid all of the principal and interest and any other charges described below that [Savchenko] may owe under [the] Note." Ex. A, Note, ¶ 3.

8. The Note also contained a "Maturity Date" of January 1, 2008, on which Savchenko agreed to pay in full any remaining amounts due under the Note. Ex. A, Note, ¶ 3.

9. Savchenko made the scheduled payments through September 2007. However, on October 1, 2007, Savchenko failed to make the scheduled payment, and thereafter has not made a single payment to Webster.

10. The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Savchenko] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. A, Note, ¶ 6(A).

11. The Note provides that if a payment is not made on the date it is due, Savchenko will be in default. Ex. A, Note, ¶ 6(B).

12. Therefore, Savchenko is currently in default.

13. On January 7, 2008, pursuant to the terms of the note, Webster sent Savchenko a notice of default, and now deems the full amount of principal and interest due. Ex. A, Note, ¶ 6(c).

## COUNT ONE – Breach of Contract

14. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 13 above as if fully set forth herein.

15. Webster offered to loan Savchenko the sum of $999,900 on the terms described in the Note.

16. Savchenko accepted the terms of the Note.

17. The consideration for the contract consisted of Webster's payment of the principal and Savchenko's agreement to repay the loan with interest.

18. The parties memorialized their agreement on December 15, 2006 by executing the Note, thus creating a valid and enforceable contract.

19. By funding the loan, Webster fully performed.

20. Savchenko began performance by making monthly interest payments.

21. On October 1, 2007, Savchenko stopped making monthly payments, is now in default and thereby breached the contract.

22. Pursuant to the terms of the Note, Webster deems the entire sum of principal and interest due and payable.

23. The terms of the Note provided that Savchenko agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. A, Note, ¶ 6(E).

24. As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $988,181.00

**WHEREFORE**, plaintiff Webster Bank respectfully requests that this Court enter judgment in Webster's favor and against Savchenko on the Note in an amount to be proved at trial including interest at the default rate, attorney's fees, costs, expenses believed to be in excess of $988,181.00 and order any other relief the Court deems equitable and just under the circumstances.

Dated: April 2, 2008

Daniel Lynch (Ill. Bar No. 6202499)
Lynch & Stern LLP
150 S. Wacker Dr., Suite 2600
Chicago, IL  60606
(312) 346-8700 / (312) 896-5883 (fax)

Respectfully submitted,
Webster Bank, National Association,

 s// *Daniel Lynch* (filed electronically)
By: One of Its Attorneys

# Exhibit A – Note

# WEBSTER BANK EZ TWO™ - CONSTRUCTION LOAN NOTE

## (SHORT TERM DAILY VARIABLE RATE - BALLOON PAYMENT)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| December 15, 2006 | Northbrook | Illinois |
|---|---|---|
| Date | City | State |

**4907 N. Winchester Avenue, Chicago, IL 60640**
(Property Address)

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 999,900.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Webster Bank, National Association**. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder". The loan will be disbursed through future advancements to pay for construction to be undertaken on the premises located at the Property Address, and shall include the terms and provision of the attached Construction Rider to Note and Security Instrument.

### 2. INTEREST

(A) Interest will be charged on unpaid principal until the full amount of principal has been paid. The interest rate during the term of the loan will be variable and will be computed on a daily basis and calculated on the basis of a 365 day year, for the actual number of days elapsed from the date of each advance to and until maturity at an annual rate equal to the sum of the "Prime Rate" (as hereinafter defined) plus **2.500** percent.

(B) As used herein, the "Prime Rate" shall be the highest prime rate as published in the Money Rates Table of the Wall Street Journal. The annual interest rate under this note will be computed each time there is a change in the Prime Rate so that the annual interest rate under this note will equal the **Prime Rate plus** **2.500** percent. If more than one prime rate is published in the said Money Rates Table, the Lender will use the highest of these rates. If the Wall Street Journal ceases publication or ceases to publish a Money Rates Table or if a prime rate is no longer included among the rates published therein, the Lender will substitute a comparable index. The selection of a comparable index shall be made in Lender's sole discretion. The "Prime Rate" is not necessarily the lowest loan rate offered by the Lender. The rate of interest hereunder shall be reviewed daily, and will change simultaneously with changes in the Prime Rate.

(C) The interest rate required by this Section 2 is the rate I will pay, and changes shall be made as provided therein, both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay "interest only" before maturity by making payments every month, in accordance with billing from the Lender or Note Holder.

I will make my monthly payments on the **1st** day of each month beginning on **February 1, 2007**. I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on **January 1, 2008**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "**Maturity Date**".

I will make my monthly payments at **Webster Plaza, 145 Bank Street, Waterbury, CT 06702**, or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount that is computed under the terms of this Note, until the Maturity Date when the entire outstanding balance of principal, and all accrued interest will be due and payable in full.

EZ TWO™ - Multistate - Short Term Daily Variable Rate - Balloon Payment - Construction Loan Note
Page 1
4704246603
YAKpb

**4. PREPAYMENTS**

Unless otherwise limited by written agreement, I will have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge, unless I have agreed to pay such a charge or penalty in any other agreement, in which case such charge or penalty shall be due. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

   **(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest and principal then due. I will pay this late charge promptly but only once on each late payment.

   **(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

   **(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

   **(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

   **(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES.**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURED NOTE**

This Note is a secured instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property, or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
ROMAN SAVCHENKO          -(Borrower)

_____(Seal)
                -(Borrower)

_____(Seal)
                -(Borrower)

_____(Seal)
                -(Borrower)

*(Sign Original Only)*